2002 UT App 211

**STATE of Utah, Plaintiff and Appellee,**

v.

**Juan Quiterio PEREZ, Defendant and Appellant.**

No. 20000517–CA.

Court of Appeals of Utah.

June 20, 2002.

Stephen R. McCaughey, McCaughey & Metos, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Marian Decker, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

ORME, Judge:

¶ 1 Defendant Juan Quiterio Perez appeals his aggravated burglary and attempted murder convictions. He raises several issues on appeal. Perez makes two claims regarding the jury instructions at trial. He argues (1) that the trial court's inclusion of a jury instruction on attempted depraved indifference murder was prejudicial error, and (2) that the trial court's failure to include an instruction on criminal attempt amounts to manifest injustice. Perez also raises two issues regarding the State's alleged failure to properly notify him of expert witness testimony. He claims that (1) the trial court abused its discretion by not excluding the expert testimony, pursuant to Rule 16 of the Utah Rules of Criminal Procedure, and (2) the trial court erred by not granting a continuance pursuant to Utah Code Ann. § 77–17–13(4)(a) (1999). Finally, Perez claims the trial court abused its discretion by failing to consider all the

1. Perez raises additional concerns, which are

relevant sentencing factors before imposing consecutive prison terms.[1]

¶ 2 We affirm in part, reverse in part, and remand for a new trial on the attempted murder charge.

## BACKGROUND

¶ 3 The victim in this case, Ellen, and her adult son, Robert, moved into a four-plex apartment in Midvale, Utah, on April 28, 1999. On August 9, 1999, at about 12:30 a.m., an intruder entered Ellen's apartment through the kitchen window, went to her bedroom, and attacked her with a knife as she lay in bed. Ellen sustained a three-centimeter cut under her eye and a one-centimeter cut on her scalp, each requiring stitches, as well as abrasions on her shoulder, breast, arms, and hands. After her assailant left, Ellen woke Robert and then called the police.

¶ 4 Ellen was still on the phone when Officer Holdaway arrived. She told Officer Holdaway that she awoke to find a person on top of and assaulting her. Ellen could not identify her assailant, but she said she thought he was Hispanic because she had experienced previous problems with Hispanics in the neighborhood and because the assailant "smelled" Hispanic.

¶ 5 Officer Wathen arrived thereafter and conducted the crime scene investigation. After doing a cursory walk-through of the crime scene, Officer Wathen looked for fingerprints near the kitchen window where Ellen said her assailant entered and exited the apartment. On the tile of the windowsill, he found several prints, one of which was clearly discernible. That print was left by a finger from a right hand. Officer Wathen found other prints on the window pane that were clearly visible to the naked eye, assisted only by the illumination of a flashlight. They were from a left hand. A Detective Burgon later determined that both the print on the windowsill and the prints on the window pane matched Perez's fingerprints.

¶ 6 A month after the incident, Detective Norton, the case manager, showed Ellen an array of six photos, including one of Perez,

summarily dealt with in Note 7 of this opinion.

who has a distinctive birth mark on his forehead. Although Ellen thought a couple of the men looked familiar, Detective Norton indicated Ellen "didn't recognize anybody in there as anybody that she had ever seen before."

¶ 7 On September 30, 1999, Perez was charged with aggravated burglary and attempted criminal homicide, and on October 5, 1999, Detective Norton interrogated Perez. Two Immigration and Naturalization Service agents participated in the interrogation and provided Spanish translation for Detective Norton. Agent Earnest interpreted while waiting for another agent to arrive; when the second agent arrived, Agent Earnest left.

¶ 8 The full interrogation was recorded, but portions of the recording were subsequently recorded over. What remained of the tape was interpreted and transcribed by a professional Spanish translator, and that transcript was admitted into evidence at trial.

¶ 9 The transcript of the interrogation reveals that Perez admitted he used to live in the apartment above Ellen and knew of Ellen and her son, though he claimed he had no involvement with them. Perez did admit that he once entered Ellen's apartment. Perez stated, however, that when he entered the apartment it was vacant—unoccupied by persons or furnishings—and that his purpose for entering was to have sex with a prostitute. Perez claimed he entered the apartment through the kitchen window, that he opened the front door from the inside to let the prostitute in, and that the two of them left through the front door. Perez maintained that there was no dead bolt lock on the front door when he went into the apartment. Perez also steadfastly denied any involvement in the incident giving rise to this case.

¶ 10 Perez's trial counsel entered his appearance on October 12, 1999, and made a contemporaneous discovery request for all "inculpatory evidence"; all "reports or results of scientific tests"; "[a]ny police or investigative reports"; and the names, addresses, and telephone numbers of all potential witnesses. On October 20, 1999, defense counsel made a second discovery request, asking specifically for "[a]ll reports, documents and other information related to any fingerprint evidence and analysis conducted." The State's written response to Perez's second discovery request stated both that the "State is not in possession of requested items," and that "[o]ther documents may or may not exist in individual police agency files and you are directed to contact these agencies for such information."

¶ 11 Defense counsel then filed a motion to compel discovery, asserting that "it is clear from what the State has already provided that materials of the kinds that defendant specifically . . . requested in his Second Request exist, and are accessible to law enforcement investigating this case." Defense counsel also challenged the prosecution's invitation for the defense to contact the police directly concerning those items. *See State v. Shabata*, 678 P.2d 785, 788 (Utah 1984) ("Information known to police officers working on a case is charged to the prosecution since the officers are part of the prosecution team."). The trial court never acted on Perez's motion to compel. On March 24, 2000, defense counsel filed a notice that he may call an expert witness on fingerprint analysis. In the notice, counsel stated that he could not specify the substance of the expert's testimony "[s]ince defendant ha[d] not yet received full discovery or an expert witness notice from the State on this subject." On March 30, 2000, two weeks before trial, the State filed a notice of intent to call Detective Burgon as an expert witness on fingerprint identification. The State, however, never notified Perez of an intent to call Officer Wathen as an expert.

¶ 12 During his opening statement at trial, the prosecutor conceded: "We clearly don't have an identification here. But we have some pretty good evidence . . . of the fingerprints and the telling stab wounds on Ellen[.]" Defense counsel followed in his opening statement by reiterating that Ellen "really doesn't have any idea who attacked her." He also asserted that although Perez's prints had been found on the window pane and windowsill in Ellen's apartment, the State could not connect Perez to the crime because "the fingerprint witnesses in the case will tell you that fingerprints can last a long time."

¶ 13 At trial, the State called Officer Wathen and, without defense objection, elicited testimony from him as an expert on fingerprint placement. On direct examination, Officer Wathen explained: "I guess the easiest thing to explain is that when a print is fresh or recent, they seem to just jump out. There is very fine, ridge detailing." He then said of the print found on the windowsill: "[I]t just jumped right out. The only way I can describe it is it looked as if I took my own finger and put it on and pulled it away and hit it with a brush. It just came right up." Of the prints found on the window pane, he said: "I took my flashlight, held it up to the window at an angle, and, again, boy, I saw a great set of prints on there that even without fingerprint powder I could see had ridge detail on them."

¶ 14 Rather than objecting to the testimony, Perez's counsel commenced cross-examination. Defense counsel mentioned Officer Wathen's previous testimony that some fingerprints "jump out," and then elicited from Officer Wathen a concession that "fingerprints can last a long time," even years. He also elicited from Officer Wathen a variety of environmental factors that influence the longevity and quality of latent fingerprints, although there was no subsequent testimony analyzing the prints in this case in light of those factors. Officer Wathen also explained techniques, not used in this case, for lifting fingerprints that are "very, very old." He also expressed again that when he "roll[s][his] own fingers" on a surface and then immediately checks for prints that the "prints pop[ ] right up."

¶ 15 On redirect examination, the prosecutor asked Officer Wathen: "[I]f a print was a year old, would it pop up?" Defense counsel objected to this question on the ground that the defense had "not been noticed up that [Officer Wathen] would be an expert on the time and place of the fingerprints." The court noted that "the question of 'pop up' was gone into on cross-examination." Defense counsel acknowledged it had been, but said that going into "pop up" on cross-examination was "only to clarify it." Defense counsel did not at this time or any other explicitly request a continuance or the exclusion of Officer Wathen's testimony.

¶ 16 The trial court overruled defense counsel's objection, stating: "Well, I believe we are dealing here with the question of this gentleman's opinion with regard to recent placing of a latent print that he recovered. So the time frame, I think, is an important consideration and I am overruling the objection." Officer Wathen then testified that "[i]f a print was over a year old" it would not pop up "as clearly and pronounced as it did in this particular occasion." There was no further testimony regarding the timing of fingerprint placement.

¶ 17 Ellen's testimony at trial both contradicted in some respects, and added considerably to, what she had said in her first statement to police and her statements after seeing the photo array. Specifically, Ellen testified that she and Perez had previously exchanged words and Perez had said, on more than one occasion, "You are dead meat."

¶ 18 Ellen testified that after a struggle and ultimately fending off the intruder's attack by kicking him in the "private part," she pursued him back down the hallway. She went to the front room to get her cane in order to "hit whoever it was." The intruder tried to flee out the front door but discovered it had a deadbolt lock that, even from the inside, required a key to open. Thus, the intruder next walked right past Ellen to get a chair from a desk in the living room. He then took the chair to the kitchen, climbed up on the counter, and escaped out the kitchen window.

¶ 19 Ellen also testified that she had cleaned her kitchen windows when she first moved into the apartment. Finally, Ellen testified that the deadbolt lock on the door had not worked when she and Robert moved in and that they installed a new one themselves. Perez did not testify at trial, and his defense strategy focused almost exclusively on disputing whether he was properly identified as Ellen's assailant.

¶ 20 The jury found Perez guilty of aggravated burglary, a first degree felony, and attempted murder, a second degree felony.

At sentencing, the trial court sentenced Perez to consecutive terms of five years to life for the first degree felony and one to fifteen years for the second degree felony. Defense counsel objected to the consecutive nature of the sentences. The trial court overruled the objection.

¶ 21 Perez now appeals his convictions and the imposition of consecutive sentences.

## ISSUES AND STANDARDS OF REVIEW

¶ 22 We first address Perez's two claims regarding the jury instructions. Perez preserved his first claim by objecting at trial to the inclusion of an instruction allowing the jury to consider the non-existent crime of attempted "depraved indifference" murder. The State concedes the trial court erred by including such an instruction. However, when a jury instruction is erroneous, "we will reverse only if the defendant shows a reasonable probability the error affected the outcome of his case." *State v. Tinoco*, 860 P.2d 988, 990 (Utah Ct.App.1993).

¶ 23 Perez raises for the first time on appeal his claim that the trial court erred by failing to give a jury instruction on criminal attempt. "[J]ury instructions to which a party failed to object at trial will not be reviewed absent a showing of manifest injustice." *State v. Gibson*, 908 P.2d 352, 354 (Utah Ct.App.1995), *cert. denied*, 917 P.2d 556 (Utah 1996). *Accord* Utah R.Crim. P. 19(e).

¶ 24 Perez alleges the State failed to give proper notice regarding the expert witness testimony of one police officer. He claims the trial court should either have excluded the officer's testimony pursuant to Rule 16(g) of the Utah Rules of Criminal Procedure or granted a continuance pursuant to Utah Code Ann. § 77–17–13(4)(a) (1999).

[A] trial court's decision to admit or bar testimony for failure to adhere to discovery obligations lies within the trial court's discretion. *See State v. Begishe*, 937 P.2d 527, 530 (Utah Ct.App.1997). Similarly, a trial court's decision to either grant or deny a continuance is also clearly within its discretion. *See id.* Therefore, we will not disturb such decisions absent a clear abuse of discretion. *See id.* *State v. Arellano*, 964 P.2d 1167, 1169 (Utah Ct.App.1998).

¶ 25 Finally, Perez contends the trial court erred by not considering all the legally relevant factors before imposing consecutive sentences. "A sentence will not be overturned on appeal unless the trial court has abused its discretion, failed to consider all legally relevant factors, or imposed a sentence that exceeds legally prescribed limits." *State v. Nuttall*, 861 P.2d 454, 456 (Utah Ct.App. 1993).

## ANALYSIS

### I. Jury Instructions

#### A. Attempted Depraved Indifference Murder

¶ 26 Perez first argues the trial court committed prejudicial error by instructing the jury, over his objection, that it could return a verdict of guilty of attempted murder if it found that Perez acted with depraved indifference toward human life. Perez was charged with attempted murder, in violation of Utah Code Ann. § 76–5–203(1)(a), (b), or (c), read in conjunction with our attempt statutes, sections 76–4–101 and 102(2). Section 76–5–203(1) reads in pertinent part:

(1) Criminal homicide constitutes murder if the actor:

(a) intentionally or knowingly causes the death of another;

(b) intending to cause serious bodily injury to another commits an act clearly dangerous to human life that causes the death of another; [or]

(c) acting under circumstances evidencing a depraved indifference to human life engages in conduct which creates a grave risk of death to another and thereby causes the death of another....

Utah Code Ann. § 76–5–203 (1999).

¶ 27 Under subsection (c), a verdict of guilty to murder may be returned on a depraved indifference theory. However, in *State v. Vigil*, 842 P.2d 843 (Utah 1992), the Utah Supreme Court held that the crime of

*attempted* murder requires a knowing or intentional mental state:

> [T]o convict a defendant of attempted ... murder, the prosecution must prove that the defendant had a conscious objective or desire to cause the death of another. Because the mental state required for depraved indifference homicide falls short of that intent, the crime of attempted depraved indifference homicide does not exist in Utah.

*Id.* at 848.

¶ 28 Acknowledging the Supreme Court's holding in *Vigil*, the State here concedes that the trial court erred in giving an instruction allowing a guilty verdict of attempted murder on a depraved indifference theory. The State contends, however, that the error was harmless.

¶ 29 Relying on *State v. Haston*, 846 P.2d 1276 (Utah 1993) (per curiam), Perez maintains the error was prejudicial. Haston admitted that he shot an acquaintance with a firearm at close range during a drunken quarrel, and he was convicted of attempted murder. *See id.* at 1277, 1277 n. 1. On appeal, Haston argued that the trial court had erroneously instructed the jury that it could return a verdict of guilty of attempted murder on a depraved indifference theory. *See id.* at 1277. The Supreme Court acknowledged the error and deemed it prejudicial, *see id.*, because "the evidence before the jury would have supported a conclusion that, while [Haston] did not intend or know his actions would cause death, firing a gun during a drunken quarrel was a reckless act[, and t]hus, it was possible Haston was convicted of a nonexistent crime." *State v. Ti-*

*noco,* 860 P.2d 988, 992 (Utah Ct.App.1993) (explaining the Supreme Court's rationale in *Haston*). *See Haston,* 846 P.2d at 1277. In other words, Haston's admission that he intentionally shot his victim did not amount to a concession that he intended to cause death or knew with reasonable certainty that his actions would cause death. *See Haston,* 846 P.2d at 1277. Therefore, in *Haston,* the erroneous inclusion of a jury instruction on a depraved indifference theory for attempted homicide was prejudicial. *See id.*

¶ 30 This case is directly analogous to *Haston.* The defendant in *Haston* admitted to intentionally shooting his victim at close range, and Perez similarly does not dispute that Ellen's assailant intentionally caused her bodily harm. As in *Haston,* however, there is no concession here that the assailant acted with intent to kill or that he acted knowing, with reasonable certainty, that his actions would cause death. In his opening statement, closing argument, and questions to witnesses, Perez's counsel consistently refrained from characterizing the incident as anything more than an assault.[2]

¶ 31 The *Haston* Court concluded that the evidence there supported multiple plausible conclusions as to the defendant's intent. *See Id.; Tinoco,* 860 P.2d at 992. Given that the Supreme Court held that an intentional shooting of a person at close range with a firearm did not necessarily evince an intent to kill, we simply are unable to conclude that an intentional assault with a knife, resulting in comparatively minor cuts and abrasions, standing alone, conclusively demonstrates an intent to kill.[3]

---

**2.** The following are defense counsel's statements in his closing argument characterizing the incident, with our emphasis added: "Ellen is a victim in a way that is described in those element instructions. *She is a victim of an assault.*" "She was injured in all the ways described, and *she was assaulted by somebody.*" "[No] one [investigated the neighbors] ... to even knock on the door on the night somebody was attempted murdered, *if that's what happened, or assaulted for sure.*" That Perez's defense strategy focused on challenging whether he was properly identified as Ellen's assailant does nothing to lessen the burden on the State to prove beyond a reasonable doubt that the assailant, whoever he was, acted with the requisite intent. *See State v. Herrera,* 895 P.2d 359, 368 (Utah 1995) ("[D]ue pro-

cess mandates that the prosecution prove every element of the charged crimes beyond a reasonable doubt.").

**3.** Even given the belatedly-remembered threats that Ellen was "dead meat"—a colloquial expression that is not invariably a death threat—the facts at trial fall short of conclusively establishing that Ellen's attacker intended to kill her. Her assailant inflicted only two relatively minor cuts and some abrasions, while she managed to deliver an effective kick of her own. Furthermore, according to Ellen, although she stood watching while her assailant tried to open the front door and then carried a chair past her into the kitchen, the assailant made no further attempt to

¶ 32 Because the jury in this case might well have based their attempted murder conviction on a depraved indifference theory, the error of including an instruction on attempted depraved indifference homicide was prejudicial. We therefore reverse Perez's conviction for attempted murder.[4]

## B. Lack of an Attempt Instruction

¶ 33 Because we have reversed Perez's attempted murder conviction on the basis just stated, we need not consider his separate arguments that the court erred in not instructing the jury on criminal attempt and that his counsel was ineffective for not requesting such an instruction. It is enough to note that, if Perez is retried for attempted murder, an instruction on criminal attempt would obviously be in order. *See State v. Harmon,* 712 P.2d 291, 291–92 (Utah 1986) (per curiam) (holding that, when an attempt crime is charged, failure to instruct the jury on the elements of attempt is reversible error).

## II. The State's Failure to Disclose

¶ 34 We next address Perez's claims regarding the State's failure to notify him of its intent to call Officer Wathen as an expert witness and of the substance of Officer Wathen's proposed testimony. Perez claims the trial court erred by failing either to exclude Officer Wathen's testimony, pursuant to Rule 16(g) of the Utah Rules of Criminal Procedure, or to grant a continuance, pursuant to section 77-17-13. We separately examine Perez's Rule 16 and section 77-17-13 claims.

## A. Utah R.Crim. P. 16

■ In criminal prosecutions, the State has two independent obligations to provide evidence to the defense. First, the State has a duty under the Due Process Clause of the United States Constitution to provide, without request by the defendant, all exculpatory evidence. *State v. Worthen,* 765 P.2d 839, 850 (Utah 1988); *State v. Carter,* 707 P.2d 656, 662 (Utah 1985). Second, when required by court order, the State must disclose evidence pursuant to Rule 16 of the Utah Rules of Criminal Procedure.

*State v. Kallin,* 877 P.2d 138, 143 (Utah 1994). "The evidence in question—[Officer Wathen's testimony regarding the recency of the placement of the fingerprints recovered from the crime scene]—was inculpatory rather than exculpatory. Consequently, the prosecutor's discovery duty was limited to disclosures under Rule 16," as opposed to those required by the Due Process Clause. *State v. Rugebregt,* 965 P.2d 518, 522 (Utah Ct.App.1998).

■ ¶ 35 "Regarding discovery under Rule 16, '[t]he practice in this state, at least in some districts, is for the prosecutors to make all inculpatory evidence available to the defense on request.' " *Id.* (quoting *Kallin,* 877 P.2d at 143).

Whether prosecutors produce inculpatory evidence under court order or on request, they have a duty to comply fully and forthrightly. In *State v. Knight,* 734 P.2d 913, 916–17 (Utah 1987), [the Utah Supreme Court] held that when the prosecution makes a voluntary disclosure of inculpatory evidence to a defendant, the

---

harm her. These facts would allow a properly instructed jury to readily conclude that although Ellen's assailant intended to harm her, he did not attack Ellen with an intent to kill her. And as explained, merely acting with depraved indifference to human life is not enough to support a conviction for *attempted* homicide.

4. In arguing that the inclusion of the depraved indifference instruction was harmless error, the State makes much of our decision in *State v. Tinoco,* 860 P.2d 988 (Utah Ct.App.1993). Tinoco was charged with aggravated assault and admitted to committing acts conclusively establishing an aggravated assault, i.e., that he intentionally shot his victim with a firearm. *See id.*

at 992. On appeal, Tinoco argued that the trial court's jury instruction on a reckless attempt theory of aggravated assault was prejudicial error. *See id.* We held that any error in that instruction was harmless because Tinoco's admissions established that he had committed aggravated assault under another, plainly legitimate, theory. *See id.* As explained more fully in Note 2, we reject the State's contention here that Perez likewise "strategically conceded below that Ellen's attacker committed attempted murder." Our rejection of that claim negates the claimed similarity essential to analogizing this case to *Tinoco.*

prosecution must produce all the requested material or identify those portions not disclosed. If evidence is disclosed, the prosecutor has a continuing obligation to disclose newly acquired information so as to avoid misleading the defense.

*Kallin,* 877 P.2d at 143.

¶ 36 Because the trial court never acted on Perez's motion to compel discovery, the State did not violate Rule 16 through failure to comply with a court order. However, the prosecution voluntarily disclosed at least some inculpatory evidence, including the report accompanying the State's notice of intent to call Detective Burgon as an expert, which contained comparisons matching the fingerprints lifted from the crime scene to Perez's. By its voluntary disclosure of some inculpatory evidence, the State was under "a continuing obligation to disclose newly acquired information so as to avoid misleading the defense." *Id.* Thus, the State's failure to disclose the anticipated testimony of Officer Wathen was clearly in violation of Rule 16 of the Utah Rules of Criminal Procedure.[5]

¶ 37 Nevertheless, we cannot conclude that the trial court abused its discretion under Rule 16 by admitting Officer Wathen's testimony. "When the prosecution introduces unexpected testimony, a defendant 'essentially waive[s] his right to later claim error' if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g)." *Rugebregt,* 965 P.2d at 522 (quoting *State v. Larson,* 775 P.2d 415, 418 (Utah 1989)). Perez's counsel did not object to the State's calling of Officer Wathen, establishing him as an expert on fingerprint analysis, or questioning him regarding the time frame when Perez's prints were placed on the window pane and windowsill. Perez's counsel did not object to Officer Wathen's testimony following his direct examination; indeed, defense counsel pursued

a similar line of questioning on cross-examination. Defense counsel's first objection to Officer Wathen's expert testimony came only during redirect examination. Although the prosecutor's nondisclosure was clearly in violation of Rule 16 of the Utah Rules of Criminal Procedure, Perez "waived relief under rule 16(g) . . . by not making timely efforts to mitigate or eliminate the prejudice caused by the prosecutor's conduct." *State v. Griffiths,* 752 P.2d 879, 883 (Utah 1988).

### B. Section 77–17–13

¶ 38 Alternatively, Perez argues the trial court abused its discretion by not granting a continuance pursuant to Utah Code Ann. § 77–17–13(4)(a) (1999).[6] Subsections 77–17–13(1) and (2) mandate:

(1) (a) If the prosecution or the defense intends to call any expert to testify in a felony case at trial or any hearing, . . . the party intending to call the expert shall give notice to the opposing party as soon as practicable but not less than 30 days before trial or ten days before the hearing.

(b) Notice shall include the name and address of the expert, the expert's curriculum vitae, and a copy of the expert's report.

(2) (a) The expert shall prepare a written report relating to the proposed testimony.

(b) If the expert has not prepared a report or the report does not adequately inform concerning the substance of the expert's proposed testimony including any opinion and the bases and reasons of that opinion, the party intending to call the expert shall provide to the opposing party a written explanation of the expert's anticipated testimony sufficient to give the opposing party adequate notice to prepare to meet the testimony, followed by a copy of any report prepared by the expert when available.

---

**5.** It is also clear that the State's failure to make this disclosure did mislead the defense because, in his opening statement at trial, defense counsel asserted that "the fingerprint witnesses in this case will tell [the jury only] that fingerprints can last a long time."

**6.** Notwithstanding language in *State v. Arellano,* 964 P.2d 1167, 1169 (Utah Ct.App.1998), the

mandatory language of section 77–17–13(4)(a) suggests it may be more precise to view the court's *discretion* as limited to determining how long the continuance should be. If a party is entitled to a continuance under the terms of the statute, it is difficult to see how a court would have the discretion to ignore the statutory mandate.

Furthermore, subsection 77–17–13(4)(a) provides: "If ... the prosecution fails to meet the requirements of this section, the opposing party shall be entitled to a continuance of the trial ... sufficient to allow preparation to meet the testimony."

¶ 39 Because the State never notified Perez of its intent to call Officer Wathen as an expert, the State plainly violated section 77–17–13. Perez was therefore entitled to a continuance "sufficient to allow preparation to meet [Officer Wathen's] testimony." *Id.* These two conclusions, however, do not necessarily mean that the trial court erred by not granting a continuance.

¶ 40 Perez did not object to Officer Wathen's testimony on lack of notice grounds until after defense counsel questioned Officer Wathen on cross-examination and the prosecutor began redirect examination of Officer Wathen. He never actually requested a continuance. Nonetheless, Perez asserts that the trial court should have granted a continuance sua sponte: "Although defense counsel failed to request a continuance, the expert notification statute provides that trial judges 'shall' continue a trial when the opposing party fails to give notice of expert testimony." Perez mischaracterizes the language of subsection 77–17–13(4)(a).

¶ 41 Subsection (4)(a) does not mandate "that trial judges *'shall' continue* a trial when the opposing party fails to give notice of expert testimony." Rather, it states that "the opposing party *shall be entitled to* a continuance of the trial" in that circumstance. *Id.* (emphasis added). "Entitle" is defined as "furnish with proper grounds for seeking or claiming something." Webster's Third New Int'l Dictionary 758 (1993). Thus, the plain language of subsection (4)(a) granted Perez the right to a continuance, the granting of which was contingent on his "seeking or claiming" it. *Id.* In the absence of a request, the trial court had no duty to order a continuance. Perez's objection to Officer Wathen's expert testimony came too late, and the trial court did not abuse its discretion by failing to grant a continuance that was not requested.

### III.   Consecutive Sentences

¶ 42 "Although resolution of the above issue[s] is dispositive of the present case, where an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty of 'pass[ing] on matters which may then become material.' " *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 22, 20 P.3d 388 (quoting *LeGrand Johnson Corp. v. Peterson*, 18 Utah 2d 260, 263, 420 P.2d 615, 617 (1966)) (second alteration in original). Because on remand the issue Perez raises concerning consecutive sentences may again become germane, we address Perez's argument on this issue. Specifically, Perez contends that the trial court abused its discretion by failing to consider all the relevant sentencing factors before imposing consecutive prison terms.

¶ 43 "A sentence will not be overturned on appeal unless the trial court has abused its discretion, failed to consider all legally relevant factors, or imposed a sentence that exceeds legally prescribed limits." *State v. Nuttall*, 861 P.2d 454, 456 (Utah Ct.App.1993). The Utah Code mandates: "A court shall consider the gravity and circumstances of the offenses and the history, character, and rehabilitative needs of the defendant in determining whether to impose consecutive sentences." Utah Code Ann. § 76–3–401(4) (1999). Concurrent sentences are favored over consecutive ones. *See State v. Galli*, 967 P.2d 930, 938 (Utah 1998).

¶ 44 At the sentencing hearing, prior to the court announcing its sentence, defense counsel said nothing of substance regarding any of the section 76–3–401(4) factors. The prosecutor noted only:

> [T]here's not much to add to the presentence report. The court having heard the evidence, you're well aware of what I would consider to be the egregious conduct in this case.
>
> This individual, based on the conduct and his inability to accept responsibility for this offense in terms of a serious threat to this community, and I would ask the court to follow the presentence investigation recommendations, which it seems to me to be appropriate in this matter.

**460**

¶ 45 The presentence report recommended that "the defendant be committed to the Utah State Prison and serve concurrent terms as prescribed by law." The trial court concluded:

Mr. Perez, having heard the evidence at the trial, I am persuaded that the jury verdict was correct, that, indeed, Mr. Perez, the conduct in which you engaged was—egregious, I guess is an appropriate term. Breaking into a little lady's home in the middle of the night and stabbing her with a knife, which of course is what the jury found you guilty of having done, in my estimation in this civilized society cannot and will not be tolerated, Mr. Perez.

Therefore, it is the judgment and sentence of this court that you be committed to the Utah State Prison forthwith to serve the term provided by law for the first degree felony of five years to life, and for the second degree felony of one to 15 years, and that those terms be served consecutively and not concurrently.

¶ 46 Defense counsel promptly objected:

There was one thing I would like to make a record of, and I would like to object to the consecutive. Even under the facts of this case it seems very clear that it was a single criminal episode and involvement of minutes by the assailant in this case.

And I don't think that there are any other aggravating factors. Mr. Perez wasn't on probation at the time. And we would enter an objection and request that you modify and order that they run concurrent.

¶ 47 The trial court overruled the objection, stating:

[Defense counsel], your request is denied. I view the activities of this man to be essentially two separate incidents. He

broke into the place in the middle of the night. And then he uses a knife to stab the victim. Those, to me, any way you cut it, are two separate crimes.

Now, if I was to grant him concurrent terms at the prison your ultimate appeal wouldn't have near the poignancy. Good luck to you.

¶ 48 The only comment at the sentencing hearing that could be construed as touching on Perez's history, character, or rehabilitative needs is defense counsel's statement that Perez was not on probation at the time of the incident. The trial court's brief commentary dealt only with the "gravity and circumstances of the offenses," and did not explicitly address the presentence report's recommendation of concurrent sentences. In short, there is nothing in this record to indicate that the trial court "consider[ed] the ... history, character, and rehabilitative needs of the defendant in determining whether to impose consecutive sentences." Utah Code Ann. § 76–3–401(4) (1999). If Perez is again tried for attempted murder and convicted by a properly instructed jury, the sentencing court must consider all of the statutorily prescribed factors for determining whether to impose consecutive sentences.

CONCLUSION

¶ 49 The trial court erred in instructing the jury on attempted murder and Perez's conviction for that offense is reversed and the case remanded for a new trial on that charge or such other proceedings as may now be appropriate. This essentially moots his objection to the imposition of consecutive sentences. Perez waived his right to request a continuance when the State's dereliction in properly notifying him of its intention to use expert testimony became apparent. Other concerns he raises do not warrant disturbing his aggravated burglary conviction.[7] Accord-

7. Perez assails various tactics of the trial court, including a question it put to the translator who prepared the partial transcript of Perez's interrogation by Detective Norton; show of sympathy toward INS Agent Earnest; interference with cross-examination of Officer Holdaway regarding prostitution in the area and a related reference to Perez "tell[ing] his story when he gets an opportunity"; characterization of permitted opinion

testimony by Officer Wathen; unnecessary commentary about defense counsel's request for a bathroom break; rushing defense counsel in his making a record of his objections to various jury instructions and editorializing about the quality of the presentation of objections; and requiring Perez's translator to complete the translation of the jury instructions for Perez after the jury began deliberating. The State does not disagree

ingly, that conviction and sentence are affirmed.

¶ 50 WE CONCUR: RUSSELL W. BENCH, Judge, and JAMES Z. DAVIS, Judge.

with the factual premise of Perez's complaints, but points out that the trial court also rushed and interrupted the prosecuting attorney and objected, sua sponte, to prosecution questions as well, albeit with less frequency than befell Perez's counsel. The State also points out that many of these problems were rectified with the jury instructions, including instructions recognizing the jury as sole judge of the evidence and Perez's right to remain silent. *See generally State v. Harmon,* 956 P.2d 262, 271–77 (Utah 1998).

It is enough for purposes of this appeal to observe that Perez has failed to demonstrate that these actions, most of which were not objected to at the time, so tainted his trial that, but for those

events, he likely would have been acquitted. *See State v. Litherland,* 2000 UT 76, ¶ 31, 12 P.3d 92 ("To demonstrate plain error, [an appellant] must show an error occurred that should have been obvious to the trial court *and* that prejudiced the outcome of his trial.") (emphasis added).