2007 UT App 13

**STATE of Utah, Plaintiff and Appellee,**

v.

**Gary Christian DAVIS, Defendant and Appellant.**

**No. 20050952–CA.**

Court of Appeals of Utah.

Jan. 19, 2007.

Gary W. Pendleton, St. George, for Appellant.

Mark L. Shurtleff, atty. gen., and Joanne C. Slotnik, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

McHUGH, Judge:

¶ 1 Defendant Gary Christian Davis appeals from the enhancement of his convictions of possession of a controlled substance, *see* Utah Code Ann. § 58–37–8(2)(a)(i), (4)(a) (Supp.2006), and possession of drug paraphernalia, *see id.* § 58–37a–5 (2002). Davis also appeals from his conviction of possession of a dangerous weapon by a restricted person. *See id.* § 76–10–503(2)(a) (2003). Because we hold that the trial court gave an erroneous jury instruction and also abused its discretion by allowing a witness to render a legal conclusion, we vacate and remand for a new trial.

## BACKGROUND

¶ 2 Acting on a tip from an informant, agents of Adult Probation and Parole (AP & P) went to the Ridgeview Inn in St. George, Utah. Agent Kim Seegmiller knocked, and Davis, a parolee under the supervision of AP & P, opened the door. The room had been rented to Jeremy Arrington, but he was not present at the time AP & P agents arrived.[1] The room was occupied by Davis and two other adults, Paul Richardson and Elisha

---

1. Arrington was detained shortly thereafter in the motel parking lot.

Miller. Upon entering, the AP & P agents found drug paraphernalia containing trace amounts of methamphetamine and an SKS assault rifle in an unzipped gun case. The gun was not loaded and the agents found no ammunition in the room.

¶ 3 Davis admitted that he had used drugs in the motel room and signed a positive drug test statement in lieu of a drug test. With respect to the assault rifle, Davis admitted that his fingerprints would be on the gun but denied that it was his or that he brought it to the room. Davis was arrested and charged with possession of a dangerous weapon by a restricted person, possession of a controlled substance, and possession of drug paraphernalia.

¶ 4 Prior to the presentation of evidence at trial, Davis moved for an order prohibiting the AP & P agents from testifying about the substance of the informant's tip other than that the AP & P agents were advised that Davis was at the motel. The trial court granted the motion, stating that the tip would not be talked about except as revealing "the location of Mr. Davis."[2] Despite the order in limine and Davis's renewed objection, Agent Richard Bower was permitted to testify at trial that he had been informed that Davis "was supposedly in a motel room with possibly a gun and dope." The trial court also overruled Davis's objection to portions of the testimony of Agent Seegmiller that addressed whether Davis had "possessed" the assault rifle. The jury found Davis guilty of all charges and also found that the drug-related violations occurred within a drug-free zone. The trial court sentenced Davis to two consecutive terms of one to fifteen years in the Utah State Prison for possession of a dangerous weapon and possession of a controlled substance, and one concurrent year in jail for possession of drug paraphernalia.

¶ 5 Davis appealed.[3] Due to a clerical error in the trial court, the jury instructions were left out of the record despite Davis's request that the entire record be transmitted to this court. After oral argument, the trial court clerk discovered the omission and directed, pursuant to Utah Rule of Appellate Procedure 11(h),[4] that the record be supplemented. Neither party objected to the inclusion of the instructions, and we consider them in our disposition of this appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 First, Davis asserts that the trial court erred by instructing the jury that a bicycle path is a public park within the meaning of the statute defining drug-free zones. *See* Utah Code Ann. § 58–37–8(4)(a). A challenge to the trial court's jury instructions presents a question of law that we review for correctness, granting no deference to the trial court's conclusions. *See State v. Snyder*, 932 P.2d 120, 125 (Utah Ct.App. 1997). "However, [if] a jury instruction is erroneous, 'we will reverse only if the defendant shows a reasonable probability the error affected the outcome of his case.'" *State v. Perez*, 2002 UT App 211, ¶ 22, 52 P.3d 451 (quoting *State v. Tinoco*, 860 P.2d 988, 990 (Utah Ct.App.1993)).

¶ 7 Second, Davis argues that the trial court erred by allowing his parole officer to testify that Davis's handling of the weapon

---

2. Although the trial court initially indicated that the motel was the residence of Davis, it corrected its order in limine when Davis informed the court that he "just happened to be there" and that "[i]t wasn't his room."

3. Davis appeals from the enhancement of his drug-related crimes for being committed in a drug-free zone. He does not challenge his conviction of the predicate acts of possession of a controlled substance and possession of drug paraphernalia.

4. Rule 11(h) provides that:
   If anything material to either party is omitted from the record by error or accident ..., the parties by stipulation, the trial court, or the appellate court, either before or after the record is transmitted, may direct that the omission ... be corrected and if necessary that a supplemental record be certified and transmitted.
   Utah R.App. P. 11(h). Here, Davis did not raise the issue of a possible mistake in the record transmission until oral argument, despite the fact that several of the errors he asserts on appeal depend on our examination of the instructions. Even so, rule 11 allows the trial court to supplement the record sua sponte, and it elected to do so in this case.

constituted possession under the statute.[5] "The trial court has wide discretion in determining the admissibility of . . . testimony, and such decisions are reviewed under an abuse of discretion standard. Under this standard, we will not reverse unless the decision exceeds the limits of reasonability." *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993) (citations omitted).

■ ¶ 8 Finally, Davis contends that it was erroneous for the trial court to allow hearsay testimony relating to the informant's tip that Davis was at a motel room with drugs and a gun. "We review legal questions to make the determination of admissibility for correctness. We review the questions of fact for clear error. Finally, we review the district court's ruling on admissibility for abuse of discretion." *State v. Workman*, 2005 UT 66, ¶ 10, 122 P.3d 639 (citations omitted).

## ANALYSIS

### I. Bicycle Path as a Drug-free Zone

■ ¶ 9 Davis first argues that the trial court erred when it instructed the jury that a bicycle path is a public park within the meaning of Utah Code section 58–37–8(4)(a), which states in relevant part:

> (a) Notwithstanding other provisions of this section, a person not authorized under this chapter who commits any act declared to be unlawful under this section . . . is upon conviction subject to the penalties and classifications under this Subsection (4) if the trier of fact finds the act is committed:
>
> . . . .
>
> (v) in a public park, amusement park, arcade, or recreation center;
>
> . . . .
>
> (ix) within 1,000 feet of any structure, facility, or grounds included in Subsections (4)(a)(i) through (viii). . . .

*See* Utah Code Ann. § 58–37–8(4)(a). Over Davis's objection, the trial court instructed the jury that "the St. George City biking/hiking trail is a city park as defined by law." Davis claims that it was error for the trial court to give this instruction and also asserts that the instruction contained an erroneous legal conclusion.[6] We agree with Davis's first argument and hold that the trial court should have allowed the jury to determine whether the bicycle path was a public park within the meaning of the drug-free zone statute.

¶ 10 In *State v. Powasnik*, 918 P.2d 146 (Utah Ct.App.1996), this court addressed "whether the penalty enhancement provisions of [Utah Code] section 58–37–8 constitute an element of the underlying offense that must be proved beyond a reasonable doubt to the same trier of fact who decided guilt on the predicate crime." *Id.* at 148. We answered this question in the affirmative, reasoning that the statute "requires the *same* trier of fact who found the defendant guilty of an underlying offense to answer simultaneously the question of *where* the defendant committed the offense." *Id.* at 149 (second emphasis added). We concluded that the statute "incorporates questions of location and distance into the underlying offense. The State must prove those additional facts to the trier of fact who finds defendants guilty of the predicate crime." *Id.; see also United States v. Smith*, 13 F.3d 380, 382 (10th Cir.1993) (concluding that federal drug-free zone enhancement statute "constitutes an 'offense' which has as an element of proof that the distribution occurred within 1,000 feet of a protected place"). In *Powasnik*, we vacated the defendant's conviction on the enhancement because the trial court reserved the issue of the drug-free zone for sentencing, declining to submit that issue to the jury. *See Powasnik*, 918 P.2d at 150; *see also State v. South*, 932 P.2d 622, 627 (Utah Ct.App.1997) (reversing defendants' sentences under enhancement provision because

---

**5.** Davis further contends that there was insufficient evidence to support his conviction of possession of a dangerous weapon by a restricted person. Because we reverse Davis's conviction of this charge on other grounds, we need not address this issue.

**6.** Davis's counsel claimed at oral argument that the trial court should not have instructed the jury as a matter of law on this issue and that, even if such an instruction might be proper in some instances, the bicycle path involved in this case did not meet the definition of a public park.

State failed to offer evidence at trial to prove beyond a reasonable doubt that defendants possessed drugs within 1000 feet of a temple).

¶ 11 Although Utah appellate courts have addressed this issue solely in the context of the statute's 1000–foot distance requirement, the same rationale applies to questions of whether the predicate offense occurred in a protected area under the statute. *See Powasnik*, 918 P.2d at 149 (holding that State must prove *"additional facts"* of *"location and distance"* to the trier of fact (emphasis added)); *see also* Utah Code Ann. § 58–37–8(4)(a)(i)–(ix) (listing as protected areas public parks, schools, preschools, child care facilities, houses of worship, shopping malls, sports facilities, stadiums, arenas, theaters, movie houses, playhouses, and public parking lots).

¶ 12 In *State v. Becker*, 132 Wash.2d 54, 935 P.2d 1321 (1997) (en banc), the Washington Supreme Court held that the trial court impermissibly instructed the jury that a youth employment education program was a "school" within the meaning of Washington's drug-free zone enhancement statute. *See id.* at 1326. The Washington Supreme Court, sitting en banc, held that error occurred because the instruction "remov[ed] a disputed issue of fact from the jury's consideration," thus "reliev[ing] the State of its burden to prove all elements of the sentence enhancement statute." *Id.* The *Becker* court further reasoned that "a court cannot instruct the jury that matters of fact have been established as a matter of law." *Id.* We agree with the Washington Supreme Court and therefore hold that it was improper to instruct the jury, as a matter of law, that the bicycle path was a public park constituting a drug-free zone.

■ ¶ 13 The State contends that even if we disregard the erroneous bicycle path instruction, the jury's verdict on enhancement is valid because the trial court also instructed the jury that drug-free zones include places like public parking lots and shopping malls. However, "we cannot be sure" that the jury based its drug-free zone determination on the public parking lot instruction and not on the erroneous bicycle path instruction.[7] *State v. Dunn*, 850 P.2d 1201, 1209 (Utah 1993) (reversing a conviction for second degree murder where a jury instruction erroneously contained the language "reckless mental state," and there was no way to determine if jury relied on that language to convict defendant); *see also State v. Scott*, 732 P.2d 117, 120 (Utah 1987) (per curiam) (reversing a conviction where it was "equally likely" that jury followed an erroneous instruction as the correct instruction, and such "speculation [wa]s insufficient foundation for upholding the verdict"); *State v. Perez*, 2002 UT App 211, ¶ 32, 52 P.3d 451 ("Because the jury in this case might well have based [its] attempted murder conviction on a depraved indifference theory, the error of including an instruction on attempted depraved indifference homicide was prejudicial. We ... reverse [defendant's] conviction for attempted murder."). Therefore, the error was prejudicial because it is reasonable to believe that the bicycle path instruction "affected the outcome of [Davis's] case." *Perez*, 2002 UT App 211 at ¶ 22, 52 P.3d 451 (quotations and citation omitted); *see also State v. Penn*, 2004 UT App 212, ¶ 28, 94 P.3d 308 ("An error is prejudicial if it tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advise[s] the jury on the law." (quotations and citation omitted)). We therefore reverse the enhancement of Davis's convictions of possession of a controlled substance and possession of drug paraphernalia and remand for further proceedings.[8]

---

7. The verdict form completed by the jury simply indicates that the drug offenses took place in a drug-free zone. There is no indication whether that conclusion was based on the trial court's bicycle path instruction or on a finding that the offenses occurred within 1000 feet of a public parking lot or shopping mall.

8. We acknowledge that appellate courts have the power to direct the entry of judgment "on a lesser included offense when an error has tainted the conviction for the greater offense." *State v. Dunn*, 850 P.2d 1201, 1209–11 (Utah 1993); *see also State v. South*, 932 P.2d 622, 627 (Utah Ct.App.1997) (entering judgment of conviction for possession of a controlled substance where State did not prove to a jury that offense occurred in a drug-free zone); *State v. Powasnik*, 918 P.2d 146, 150 (Utah Ct.App.1996) (same).

## II. Testimony About "Possession"

¶ 14 Davis next argues that the trial court erred by allowing Agent Seegmiller to testify that because Davis admitted that his fingerprints were on the gun, Davis "possessed" the firearm in violation of the statute. The statute provides that a person such as Davis, who "is on probation or parole for any felony," Utah Code Ann. § 76–10–503(1)(a)(ii), is guilty of a second degree felony, *see id.* § – 503(2)(a), if he "intentionally or knowingly purchases, transfers, possesses, [or] uses" any firearm, or if he has any firearm "under his custody or control," *id.* § –503(2). On redirect examination, Agent Seegmiller testified as follows:

> Q. [Prosecutor:] Did [Davis's] own statements such as "my fingerprints will be on [the gun]," did that come into play?
>
> A. [Agent Seegmiller:] It did.
>
> Q. Why is that?
>
> A. Well, this reference he made was spontaneous that his fingerprints would be on it. *My understanding of the statute is if his fingerprints are on it that obviously means he handled it.*
>
> . . . .
>
> [Defense counsel]: Objection, your Honor. His testifying what his understanding of the statute is is inappropriate.
>
> [The court]: Overruled, Counsel. You brought it up in your cross. [The prosecutor] has an opportunity to further explore it.... [ 9]
>
> [Agent Seegmiller]: As he said they were on there, if they were, and they—he says they were. His claim was, "You'll find my fingerprints," it's an automatic that he had it in his hands. So that to

us—*our understanding again of that is the possession is to hold and to have it in your hands under your control, and that's what we went on.*

(Emphasis added.) We agree with Davis that the trial court abused its discretion by admitting this testimony.

■■■■■■ ¶ 15 Traditionally, a witness "was not allowed to offer an opinion on an ultimate issue to be decided by the jury." *Davidson v. Prince,* 813 P.2d 1225, 1230 (Utah Ct.App. 1991). Testimony on an ultimate issue is now admissible under rule 704 of the Utah Rules of Evidence, which provides: "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." [10] Utah R. Evid. 704(a); *see also State v. Span,* 819 P.2d 329, 332 n. 1 (Utah 1991). Nevertheless, opinions that " 'tell the jury what result to reach' " or " 'give legal conclusions' " continue to be impermissible under rule 704. *Davidson,* 813 P.2d at 1231 (quoting *Owen v. Kerr–McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983)). The Utah Supreme Court has set forth several interrelated rationales for this prohibition. First, "[o]pinion testimony is not helpful to the fact finder when it is couched as a legal conclusion." *Steffensen v. Smith's Mgmt. Corp.,* 862 P.2d 1342, 1347 (Utah 1993); *see also Specht v. Jensen,* 853 F.2d 805, 807 (10th Cir.1988) (en banc) ("[I]t would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently." (quotations and citation omitted)). Second, testimony that renders a legal conclu-

---

We decline to exercise this power here because we also reverse Davis's conviction of possession of a firearm. *See* Utah R.App. P. 30(b) ("If a judgment of conviction is reversed, a new trial shall be held unless otherwise specified by the court.").

9. Although the trial court overruled Davis's objection on the ground that Davis "opened the door" to the testimony, there is no indication in the record that Davis did so and neither party raises that issue on appeal.

10. Rule 704 is most often applied to expert testimony even though its plain language encompasses both lay and expert opinions. *See* Utah R.

Evid. 704(a). As set forth in rule 701, lay witnesses like Agent Seegmiller are permitted to give opinion testimony as long as the testimony satisfies certain criteria. *See* Utah R. Evid. 701 (stating that lay opinion testimony must be "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue"). Thus, rule 704 applies to this case even though Agent Seegmiller was not testifying as an expert. *See State v. Bryant,* 965 P.2d 539, 547–48 (Utah Ct.App.1998) (applying Utah Rule of Evidence 704 to crime victim's testimony).

sion "tend[s] to blur the separate and distinct responsibilities of the judge, jury, and witness." *Steffensen*, 862 P.2d at 1347–48; *see also State v. Hansen*, 734 P.2d 421, 428 (Utah 1986) (plurality) ("It is the duty of the judge to instruct the jury on relevant law."). Finally, there is "a danger that a juror may turn to the [witness's legal conclusion] rather than the judge for guidance on the applicable law." *Steffensen*, 862 P.2d at 1348.

¶ 16 No "bright line" separates permissible ultimate issue testimony under rule 704 and impermissible "overbroad legal responses" a witness may give during questioning. *Davidson*, 813 P.2d at 1231. Case law from the Utah Supreme Court, this court, and other jurisdictions, however, provides some useful guidance. *Compare Specht*, 853 F.2d at 806 (holding expert testimony from attorney that illegal search had occurred was admitted in error because it was impermissible for the witness to "state his views of the law which governs the verdict and opine whether defendants' conduct violated that law"); *Owen*, 698 F.2d at 239–40 (holding that trial court correctly excluded testimony as to legal cause of accident); *Steffensen*, 862 P.2d at 1347 (holding that trial court correctly excluded testimony on apportionment of fault because such testimony invaded the province of the jury); *State v. Stringham*, 957 P.2d 602, 607–08 (Utah Ct.App.1998) (holding that it was reversible error for the trial court to allow testimony by Internal Revenue Service agent regarding the lawfulness of defendant's activities, especially because legal conclusion rendered was overbroad); *State v. Tenney*, 913 P.2d 750, 756 (Utah Ct.App.1996) (concluding admission of testimony was erroneous because witnesses "tie[d] their opinions to the requirements of Utah law"); *and Davidson*, 813 P.2d at 1231–32 (holding that trial court properly excluded, as impermissible legal conclusion, testimony that defendant was negligent); *with State v. Larsen*, 865 P.2d 1355, 1361–63 (Utah 1993) (upholding admission of testimony in securities fraud case that information was "material" because term could be defined in two ways, one of which involved a factual issue rather than a legal conclusion); *and State v. Bryant*, 965 P.2d 539, 547–48 (Utah Ct.App.1998) (upholding admission of

victim's testimony that defendant had "robbed" her because use of term was factual, not legal).

¶ 17 Here, because Agent Seegmiller testified that Davis's fingerprints "obviously mean[t] he handled [the firearm]" and that "possession is to hold and to have it in your hands under your control," Seegmiller applied the facts of the case to the prohibitions in the statute, resulting in the rendering of a legal conclusion. Agent Seegmiller impermissibly "tie[d][his] opinions to the requirements of Utah law." *Tenney*, 913 P.2d at 756. The testimony should have been excluded because it was "an answer to a specific question [that] … appear[ed] on the verdict form." *Davidson*, 813 P.2d at 1231. Therefore, the trial court abused its discretion in allowing this portion of Agent Seegmiller's testimony.

¶ 18 The State contends that even if this testimony were erroneously admitted, it was harmless error because the trial court correctly instructed the jury on the legal requirements of possession under the statute. *See Call v. City of W. Jordan*, 788 P.2d 1049, 1053 (Utah Ct.App.1990). Davis has the burden to prove "that there is a reasonable likelihood that the verdict would have been different" had the trial court disallowed this testimony. *Steffensen*, 862 P.2d at 1347. Under the specific facts and circumstances of this case, we hold that there is a reasonable likelihood that the error was not harmless.

¶ 19 There was only minimal evidence connecting Davis to the gun, raising the possibility that the jury unduly relied upon Agent Seegmiller's improper testimony. Witnesses, Arrington and Miller, both testified that Davis handled the firearm, once to attempt to insert the loose magazine and once to pose with it in the mirror. Both Arrington and Miller testified that Davis actually touched the firearm for a total period of less than one minute. Another witness, Richardson, denied ever seeing Davis actually handle the firearm. Also, it was undisputed that Arrington, not Davis, borrowed the firearm from a third party, brought it to the motel room, and showed it to the others.

¶ 20 Moreover, this case is distinguishable from *State v. Larsen*, in which the Utah Supreme Court held that even assuming it was error to admit testimony on the materiality of information in a securities fraud case, the error was harmless. *See* 865 P.2d at 1363. The court in *Larsen* relied on several factors in reaching that conclusion. First, the *Larsen* court concluded the opinion testimony was appropriate because "the technical nature of securities is not within the knowledge of the average layman." *Id.* at 1361 (quotations and citation omitted). Consequently, an explanation of what type of information would be important to a reasonable investor might be more helpful to the jury than prejudicial. *See* Utah R. Evid. 403, 702. Second, the *Larsen* court reasoned that the "trial court correctly admonished the jury as to the relative roles of expert testimony and opinion evidence and instructed the jury to accord no unusual deference to an expert's opinions." *Larsen*, 865 P.2d at 1363. And third, the trial court "gave careful instructions regarding the legal definition and requirements of the term 'material' as used in the statute." *Id.* Because "these instructions substantially reduced whatever slight risk of confusion" the testimony may have caused, the defendant could not show that the testimony was prejudicial. *Id.*

¶ 21 Here, it appears that the trial court correctly instructed the jury on the legal requirements of firearm possession, but unlike *Larsen*, the jury did not have the benefit of instructions from the trial court on expert or opinion testimony. *See id.* Agent Seegmiller was not designated as an expert, and no expert witness instruction was given. Furthermore, the average layperson should be competent to understand the term "possession" as defined by the trial court in the jury instructions and to ascertain, without opinion testimony on that issue, whether the facts proved satisfied that element of the crime.

¶ 22 The question of harmless error in this case is close. But given the tenuousness of the evidence and the absence of a jury instruction on opinion testimony, Davis has met his burden of showing that a reasonable likelihood exists that the outcome would have been different absent Agent Seegmiller's testimony. We therefore reverse Davis's conviction of possession of a dangerous weapon by a restricted person.

### III. Out-of-Court Statements of Informant

¶ 23 Finally, Davis argues that the trial court erred by admitting hearsay contained in an informant's tip that Davis was at a motel with drugs and a firearm. Because we have reversed Davis's convictions on other grounds, we need not decide whether this issue would warrant reversal. We nonetheless offer "a brief discussion" of this issue as "guidance for the trial court on remand." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 38, 70 P.3d 35 (quotations and citations omitted).

¶ 24 The trial court granted a motion in limine restricting the testimony relating to the informant's tip to the fact that Davis could be found at the motel. Nonetheless, Agent Bower was permitted to testify as follows:

Q. [Prosecutor:] How did you come in contact with [Davis]?

A. [Agent Bower:] We [were] notified by agents in the St. George area that they had—

[Defense Counsel:] Object to whatever they notified him about. I mean it's obvious that there was some reason to go check him out. The rest is hearsay, your Honor.

[The court:] All right. It is, Counsel, but it is only for the purpose of explaining Mr. Bower's actions on that date. Members of the jury, even though that is hearsay, you are not to accept that evidence for the proof of the matter asserted-to prove the truth of anything asserted, but just to give you an explanation as to why Agent Bower did the things he did.

. . . .

Q. [Prosecutor:] What did you hear?

A. [Agent Bower:] Well, *I was notified by Agent Seegmiller that Mr. Davis was supposedly in a motel room in the St. George area with possibly a gun and dope.*

(Emphasis added.) The trial court denied Davis's hearsay objection on the ground that

the information was offered as an explanation of Agent Bower's actions and not to prove the truth of the matter asserted. Davis claims, however, that the testimony went beyond what was necessary to explain the AP & P agents' actions and should have been excluded as hearsay. Davis's position is consistent with that advanced by treatises on the subject and decisions from other jurisdictions.

> In criminal cases, the arresting or investigating officer will often explain his going to the scene of the crime or his interview with the defendant, or search or seizure, by stating that he did so "upon information received" and this of course will not be objectionable as hearsay, but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of that fact asserted that it should be excluded as hearsay.

*McCormick on Evidence* § 248, at 587 (2d ed.1972); *see also Moore v. United States,* 429 U.S. 20, 21–22, 97 S.Ct. 29, 50 L.Ed.2d 25 (1976) (per curiam) (reversing conviction based on officer's hearsay statements of informant that defendant resided in apartment and possessed controlled substances found there); *State v. Jamison,* 269 Kan. 564, 7 P.3d 1204, 1210–11 (2000) (holding that officer could not testify as to out-of-court statements of informant that inferred defendant's guilt); *State v. DuMars,* 33 Kan.App.2d 735, 108 P.3d 448, 457 (2005) (same); *State v. Robinson,* 111 S.W.3d 510, 513–14 (Mo.Ct. App.2003) (same); *State v. Bankston,* 63 N.J. 263, 307 A.2d 65, 69 (1973) (same). Thus, should this issue arise during Davis's new trial, use of the informant's tip should not include hearsay testimony regarding specific allegations of Davis's guilt.

## CONCLUSION

¶ 25 We reverse the enhancement of Davis's convictions of possession of a controlled substance and possession of drug paraphernalia because the trial court committed prejudicial error by instructing the jury that a bicycle path is a public park as a matter of law. We also reverse Davis's conviction of possession of a dangerous weapon by a restricted person because the trial court abused its discretion by allowing Agent Seegmiller to render a legal conclusion, and the testimony was prejudicial to Davis. We therefore remand to the trial court for a new trial on all three charges.

¶ 26 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.