2007 UT App 32

**SALT LAKE CITY, Plaintiff and Appellee,**

v.

**Thomas Max JARAMILLO, Defendant and Appellant.**

**No. 20041125–CA.**

Court of Appeals of Utah.

Feb. 8, 2007.

---

Ann. § 76–6–204 (2003); criminal mischief, a class B misdemeanor, *see id.* § –106(1)(c) (2003); and intoxication, a class C misdemeanor, *see* Salt Lake City Ord. § 11.12.060. Four other misdemeanor counts were dropped as a result of Jaramillo's plea agreement.

¶ 3 Jaramillo was sentenced on September 12, 2003. The trial court's written order imposed the following sentence:

> Based on the defendant's conviction of BURGLARY OF A VEHICLE a Class A Misdemeanor, the defendant is sentenced to a term of 365 day(s)[.] The total time suspended for this charge is 315 day(s). Based on the defendant's conviction of CRIMINAL MISCHIEF a Class B Misdemeanor, the defendant is sentenced to a term of 180 day(s)[.] The total time suspended for this charge is 180 day(s).
>
> . . . .
>
> The defendant is placed on probation for 2 year(s).
>
> Probation is to be supervised by Adult Probation & Parole.
>
> Defendant to serve 50 day(s) jail.
>
> Defendant is to pay a fine of 0[.]

The written sentence also ordered Jaramillo to complete fifty hours of community service, pay $1200 in restitution, and comply with enumerated conditions of probation. Jaramillo received credit against the burglary sentence for fifty days in jail that he had previously served, leaving 315 days suspended on that sentence.

¶ 4 Neither the written order nor the transcript of the trial court's oral pronouncements at sentencing contain an express indication as to whether Jaramillo's two jail terms were to run concurrently or consecutively. The trial court did state at the sentencing hearing that "I'll impose 180 days jail [on the second count], suspend all of it and place you on probation for one year on that count, to run concurrently, the probationary term at least, to run concurrently with the other [probationary term]."

¶ 5 Jaramillo failed to comply with the terms of his probation, and the trial court revoked and reinstated his probation at a

Debra M. Nelson and Heather J. Chesnut, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Padma Veeru–Collings and Aaron M. Aplin, Salt Lake City Attorney Office, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Thomas Max Jaramillo appeals from the trial court's order revoking his probation and reinstating his suspended jail time. We vacate the portion of the trial court's order that directed Jaramillo's sentences to be served consecutively.

## BACKGROUND

¶ 2 On February 26, 2003, Jaramillo pleaded guilty to one count of burglary of a vehicle, a class A misdemeanor, *see* Utah Code

hearing on February 9, 2004. At that hearing, the trial court imposed Jaramillo's suspended 315–day jail sentence on the burglary conviction, suspending 255 days and ordering Jaramillo to serve sixty days. The court ordered that the sixty days be credited only against the burglary sentence. The trial court also imposed Jaramillo's 180–day sentence on the criminal mischief conviction, but suspended all of it. The court placed Jaramillo on consecutive probationary terms of three years on the burglary conviction and one year on the criminal mischief conviction.

¶ 6 Jaramillo violated his probation again, and the trial court again revoked his probation on December 13, 2004. This time, the court imposed all of Jaramillo's suspended jail time, amounting to 255 days on the first conviction and 180 days on the second. The court also ordered the two terms to be served consecutively for a total sentence of 435 days.

¶ 7 Jaramillo objected to the imposition of consecutive sentences, asserting that his original sentence was for the two jail terms to be served concurrently. Jaramillo based this interpretation of the original sentence on an asserted presumption that a sentence is for concurrent terms unless the sentence indicates consecutive terms. The trial court rejected Jaramillo's interpretation, stating that "my understanding is that I don't have to make that election until I impose the sentence and I'll make that election today."

¶ 8 Jaramillo appeals the imposition of consecutive sentences.

## ISSUE AND STANDARD OF REVIEW

¶ 9 Jaramillo's sole issue on appeal is whether the trial court's imposition of consecutive sentences upon revocation of probation constitutes an illegal sentence when the original sentence failed to expressly specify concurrent or consecutive terms. Whether a sentence is illegal is a question of law that we review for correctness without deference to the lower court ruling. *See State v. Thorkelson*, 2004 UT App 9, ¶ 9, 84 P.3d 854.

## ANALYSIS

¶ 10 Jaramillo argues that the trial court's imposition of consecutive sentences upon revocation of his probation constitutes an illegal sentence because it increases his original sentence in violation of his due process and double jeopardy rights. Jaramillo's arguments presume that his original sentence imposed concurrent terms, but the sentencing order was actually silent on the issue of concurrent or consecutive sentencing.

¶ 11 We nevertheless agree with Jaramillo that the trial court improperly attempted to impose consecutive sentencing for the first time upon revocation of Jaramillo's probation. At Jaramillo's final probation revocation hearing, the trial court explained that "my understanding is that I don't have to make th[e] election [of concurrent or consecutive terms] until I impose the sentence and I'll make that election today." This represents a misstatement of the law, at least with regard to sentences that are originally imposed at a single sentencing hearing.

¶ 12 "The trial court's power to grant, modify, or revoke probation is purely statutory, and although a trial court has discretion in these matters, the court's discretion must be exercised within the limits imposed by the legislature." *Smith v. Cook*, 803 P.2d 788, 791 (Utah 1990). Accordingly, we look to Utah's probation statute for guidance as to whether a court may impose concurrent or consecutive sentences for the first time upon the revocation of probation. Utah Code section 77–18–1 provides that "[o]n a plea of guilty, guilty and mentally ill, no contest, or conviction of any crime or offense, the court may, after imposing sentence, suspend the execution of the sentence and place the defendant on probation." Utah Code Ann. § 77–18–1(2)(a) (Supp.2006). Further, once a defendant is sentenced and placed on probation, revocation of probation can result only in "the sentence previously imposed [being] executed." *Id.* § –1(12)(e)(iii).[1]

---

1. Utah Code section 77–18–1(12)(e)(iii) states, in its entirety: "If probation is revoked, the defendant shall be sentenced or the sentence previously imposed shall be executed." Utah Code Ann.

§ 77–18–1(12)(e)(iii). However, the "shall be sentenced" language appears to have been inadvertently retained by the legislature when it amended section 77–18–1(2)(a) to remove the

¶ 13 Utah Code section 77–18–1 distinguishes between "imposing sentence," which is a necessary prerequisite to probation, and "the execution of the sentence." *Id.* at § –1(2)(a).[2] Thus, our inquiry must turn to whether the determination of concurrent or consecutive terms of incarceration is a function of the sentence itself, which must be imposed prior to probation, or is merely a function of the execution of the sentence. Utah's sentencing statutes clearly indicate that the concurrent or consecutive determination must be imposed as a component of the sentence itself. *See id.* §§ 76–3–201(2)(d) (Supp.2006) (including "imprisonment" as an allowable component of a criminal sentence); –401 (2003) (discussing concurrent/consecutive sentencing as something that must be "imposed").

■ ¶ 14 Utah Code section 76–3–401 is particularly instructive here. Although that section, by its own terms, does not apply to misdemeanor offenses such as Jaramillo's, *see id.* § –401(11), the terminology employed throughout the section indicates that, in both felony and misdemeanor cases, the concurrent or consecutive determination is one that must be made and imposed at the time of sentencing.[3] Section 76–3–401 states that "[a] court shall determine, if a defendant has been adjudged guilty of more than one felony offense, whether to *impose* concurrent or consecutive sentences for the offenses." *Id.*

§ –401(1) (emphasis added). If a multiple felony commitment order does not state whether terms of incarceration are to be concurrent or consecutive, there is no presumption of concurrent sentences as Defendant argues; rather, the Board of Pardons and Parole "shall request clarification from the court." *Id.* § –401(4). Upon receipt of such a request, the statute does not direct the court to decide the concurrent/consecutive issue anew, but rather to "enter a clarified order of commitment stating whether the sentences are to run consecutively or concurrently." *Id.* This emphasis on clarification of the original commitment order indicates that the concurrent or consecutive decision must be made at the time of sentencing and may not be decided at some later date.

¶ 15 There are also specific statutory factors that a court must consider in making its concurrent/consecutive determination, at least with regard to cases involving multiple felony convictions. *See id.* § –401(2). *But see State v. Schweitzer*, 943 P.2d 649, 651–52 (Utah Ct.App.1997) (applying section 76–3–401(2) factors to sentencing for one felony and one misdemeanor). The requirement that the consecutive/concurrent decision be made at the time of sentencing gives the trial court, the State, and defendants a fixed point in time at which to evaluate the statutory factors. It is noteworthy that, in this case,

---

suggestion that a trial court could place a defendant on probation without a sentence and suspend the sentencing decision until probation was revoked. *See id.* § –1(2)(a) (1999) (granting the trial court the authority to "suspend the imposition or execution of sentence and place the defendant on probation"); Act of Mar. 5, 2003, ch. 290, § 3, 2003 Utah Laws 1321, 1322 (amending section 77–18–1(2)(a) to its current form); *see also State v. Walker*, 2002 UT App 290, ¶ 11 n. 8, 55 P.3d 1165 (harmonizing prior version of section 77–18–1(2)(a) with the provisions of rule 22 of the Utah Rules of Criminal Procedure). In any event, section 77–18–1 now clearly makes the imposition of sentence a prerequisite to probation, and it is undisputed that Jaramillo had already been sentenced when his probation was revoked.

2. We are aware that the word "impose" has various common usages and is employed in sentencing contexts other than the initial imposition of sentence. *See, e.g., State v. Todd*, 2006 UT 7, ¶¶ 7–8, 128 P.3d 1199 (interpreting the terms

"impose" and "imposition" as used in rules 22 and 24 of the Utah Rules of Criminal Procedure); *State v. Pizel*, 1999 UT App 270, ¶ 3, 987 P.2d 1288 ("The court then found that Pizel had violated the terms of probation, revoked and reinstated probation, imposed a suspended sentence, and ordered Pizel to serve sixty days."); *State v. Rawlings*, 893 P.2d 1063, 1068 (Utah Ct.App. 1995) ("At the hearing on the order to show cause, the plaintiff's probation was revoked and the prison sentence imposed."). We do not intend today's decision to define the word "impose" for all purposes, or to limit its usage in other contexts.

3. Even as Utah Code section 76–3–401 excludes misdemeanor cases from its purview, it makes clear that the concurrent/consecutive determination must be made at sentencing even in the misdemeanor context: "This section may not be construed to limit the authority of a court *to impose consecutive sentences* in misdemeanor cases." Utah Code Ann. § 76–3–401(11) (emphasis added).

the trial court not only purported to impose consecutive sentences long after the written sentence was entered, but also made this decision, at least in part, based on Jaramillo's probation violations, which occurred after the original sentencing.

¶ 16 We hold that the determination of whether two simultaneously imposed sentences are to be served concurrently or consecutively is to be made at the time of sentencing, and may not be made for the first time upon the revocation of probation. We need not reach the question of the meaning of Jaramillo's original written sentence, which was silent as to whether his misdemeanor sentences were to run concurrently or consecutively. It is sufficient for resolution of Jaramillo's appeal that we vacate the portion of the trial court's probation revocation order purporting to impose consecutive sentences for the first time at Jaramillo's probation revocation, in violation of Utah Code section 77–18–1.

## CONCLUSION

¶ 17 It is clear that the trial court was purporting to impose consecutive sentences on Jaramillo for the first time at the 2004 revocation hearing, which it may not do. We therefore vacate the consecutive aspect of the December 14, 2004 order, and remand this matter to the trial court for any further proceedings that may be necessary.

¶ 18 I CONCUR: JAMES Z. DAVIS, Judge.

ORME, Judge (concurring and dissenting):

¶ 19 I agree with the majority that the trial court was obliged to state, at the time of sentencing, whether Jaramillo's sentences were to run concurrently or consecutively. I therefore have no problem with our vacating the imposition of consecutive sentences that the trial court tried to effect much later, in connection with the revocation of probation. I must dissent, however, from the decision of my colleagues to provide the trial court and the parties with no practical help about what this decision means for them. Because it was not stated at sentencing which way the sentences were to be served—consecutively or concurrently—does it follow that, by default, they are to be served concurrently? Or consecutively? Or do my colleagues mean to suggest Jaramillo's sentence was illegal and void? Or voidable?

¶ 20 I assume they must believe it follows from vacating "the portion of the trial court's order that directed Jaramillo's sentences to be served consecutively" that the sentences necessarily must be deemed to run concurrently. Surely if something more far-sweeping were intended, like the conclusion that Jaramillo was never lawfully sentenced and therefore improperly served months of jail time, they would have said so.

¶ 21 The difficulty with this position is partially made clear by the majority's own thesis: It is incumbent upon the trial court to expressly pick one or the other, concurrent or consecutive, when multiple sentences are imposed. Here, the trial court did neither at the time of sentencing, mistakenly thinking it could make that decision later. While it is intuitively attractive to assume that sentences are to run concurrently unless they are explicitly mandated at the time of sentencing to be served consecutively, such a default rule is, in my mind, no longer possible given that the Legislature rather recently rescinded just such a statutory presumption. *See* Consecutive Sentencing Act, ch. 129, § 1, 2002 Utah Laws 419, 419 (codified as amended at Utah Code Ann. § 76–3–401 (2003)).

¶ 22 A layer of uncertainty is added by the majority's cryptic reference to remanding "for any further proceedings that may be necessary." The permissive verb "may" will no doubt be frustrating for the trial court and the parties. If the result of vacating the trial court's order that belatedly tried to make the sentences consecutive is that they just run concurrently, further proceedings on remand are simply not necessary. If my colleagues instead intend that the trial court is required to now specify whether the sentences run concurrently or consecutively—a sound result given that there is no self-effecting default rule in place—then further proceedings on remand are manifestly required. But it must be one or the other.

¶ 23 I simply am baffled at the use of the word "may," as though the trial court is in a better position to know what this court's decision means, and at the general reluctance of my colleagues to offer at least a modicum of guidance to the trial court about what, if anything, that court is supposed to do now. This disinclination to be helpful is especially curious in view of the oft-repeated and sound prescription, underpinned by considerations of efficiency and judicial economy, that appellate courts should offer guidance to trial courts on issues likely to surface on remand. *See, e.g., Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 22, 20 P.3d 388 ("[W]here an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty of 'pass[ing] on matters which may then become material.' ") (quoting *LeGrand Johnson Corp. v. Peterson,* 18 Utah 2d 260, 420 P.2d 615, 617 (1966)); *State v. Perez,* 2002 UT App 211, ¶ 42, 52 P.3d 451 ("Because on remand the issue [defendant] raises concerning consecutive sentences may again become germane, we address [defendant's] argument on this issue."). *See also* Utah R.App. P. (30)(a) ("The court may also order a new trial or further proceedings to be conducted. If a new trial is granted, the court may pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case.").